UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

MICHAEL COLE
Plaintiff, Pro Se
37 Pasadena Pl.
Mount Vernon, NY 10552

**25 CV 10360**

,
Plaintiff,
v.

ASSISTANT DISTRICT ATTORNEY RICHARD FARRELL, IN HIS INDIVIDUAL
AND OFFICIAL CAPACITIES;ASSISTANT DISTRICT ATTORNEY JOHN C.
CARROLL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;DETECTIVE
GREENE KUSH, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;SERGEANT
JOSEPH PISCATELLA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;POLICE
OFFICER PAUL H. ALVA (TAX #963372), IN HIS INDIVIDUAL AND OFFICIAL
CAPACITIES;SERGEANT EVAN A. COUCH (TAX #965013), IN HIS INDIVIDUAL
AND OFFICIAL CAPACITIES;POLICE OFFICER KARISA M. CRAWFORD (TAX
#969610), IN HER INDIVIDUAL AND OFFICIAL CAPACITIES;SENIOR COUNSEL
JOSEPH ZANGRILLI, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;MURIEL
GOODE-TRUFANT, ACTING CORPORATION COUNSEL, IN HER INDIVIDUAL
AND OFFICIAL CAPACITIES;ASSISTANT CORPORATION COUNSEL HANNAH
OLEYNIK, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES;CITY OF NEW
YORK; PRIVATE-ACTOR DEFENDANTS: LYNN JEROME AND PAULA SINCLAIR,
DANIEL FRIEDMAN, Esq.
Defendants.

Case No.: _____
JURY TRIAL DEMANDED

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF
(42 U.S.C. §§ 1983, 1985, 1986, 1988; FIRST AND FOURTEENTH AMENDMENTS)

## COMPLAINT

Plaintiff **Michael Cole**, by and for himself, alleges as follows:

### PRELIMINARY STATEMENT

**1.**

This is a civil rights action brought by **Plaintiff Michael Cole**, a 30% owner of **KTB Electric, Inc.**, a
New York City and New York State minority-certified electrical contracting company. Plaintiff seeks
redress for the **fabrication of criminal allegations, constitutional defamation, deprivation of property
interests, ongoing publication of false government information**, and **municipal ratification of known
falsehoods** that have inflicted severe economic, reputational, and professional harm on Plaintiff and the
company he co-owns.

**2.**

The injuries suffered by Plaintiff Cole arise from a **fabricated felony narrative manufactured by
NYPD Detective Greene Kush**, adopted without investigation by the Kings County District Attorney's
Office ("KCDAO"), and then **republished, validated, and constitutionalized** by the **City of New York**

through **Rule 11–certified filings** in the Southern District of New York falsely asserting that KTB Electric's Treasurer, Gilbert Ellis, had been arrested, arraigned, and subjected to judicial proceedings.

3.

These municipal filings—objectively false, unsupported by any judicial record, and made with notice of their falsity—became **publicly searchable government statements** relied upon by procurement officers, certification agencies, contractors, and integrity-review systems. As a result, KTB Electric lost contracts, certifications, competitive opportunities, and business goodwill, causing a direct injury to Plaintiff Cole's **30% ownership interest**, present income, and future earning capacity.

4.

Second Circuit precedent recognizes that (1) **fabrication of evidence** violates the Fourteenth Amendment; (2) **stigma-plus constitutional defamation** occurs when false government statements burden professional or economic rights; (3) **property interests** include business goodwill, contract eligibility, certification benefits, and revenue streams; and (4) continued municipal publication of false information constitutes an **ongoing constitutional injury**.

See:

**Ricciuti v. N.Y.C. Transit Auth.**, 124 F.3d 123 (2d Cir. 1997);

**Zahrey v. Coffey**, 221 F.3d 342 (2d Cir. 2000);

**Valmonte v. Bane**, 18 F.3d 992 (2d Cir. 1994);

**Spinelli v. City of New York**, 579 F.3d 160 (2d Cir. 2009);

**Patterson v. City of Utica**, 370 F.3d 322 (2d Cir. 2004).

5.

Plaintiff Cole brings this action to obtain full compensatory and punitive damages for the injuries suffered; to secure declaratory relief acknowledging the falsity and unconstitutionality of the Defendants' conduct; and to obtain injunctive relief preventing the City of New York from continuing to publish fabricated criminal allegations that destroy the business opportunities of minority-owned companies such as KTB Electric.

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in *Ellis v. City of New York*, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers—ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:

• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));

• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));

• **Property-interest deprivation** interfering with real property, equity, and business interests (*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));

• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);

• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);

• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

Plaintiff Cole's business and economic injuries stem from the same Ellis filings, which caused contracting authorities and lenders to treat KTB Electric, Inc. as associated with criminal activity. This diminished KTB's competitiveness and directly harmed Plaintiff's 30% ownership interest.

## PARTIES

6.

**Plaintiff Michael Cole** ("Plaintiff Cole") is an adult resident of the State of New York, residing at **37 Pasadena Place, Mount Vernon, NY 10552.** He is a **30% owner** of **KTB Electric, Inc.,** a minority-certified electrical contracting company operating in New York City and New York State. Plaintiff Cole's financial, reputational, business, and professional interests were directly and foreseeably harmed by Defendants' fabrication of a felony narrative, municipal republication of false allegations, and ongoing dissemination of defamatory government filings.

7.

**KTB Electric, Inc.** is a New York corporation with principal offices at **253 Ralph Avenue, Brooklyn, NY 11233,** jointly owned by Linval Buchanan (30%), Miguel Hamilton (30%), Michael Cole (30%), and Treasurer Gilbert Ellis (10%). As an M/WBE-certified contractor, the company depends on accurate municipal records, integrity scoring, procurement eligibility, and certification standing for its continued operations. Plaintiff Cole's ownership rights and economic interests are directly tied to KTB Electric's success and reputation.

8.

**Defendant City of New York** ("City") is a municipal corporation organized under the laws of the State of New York. The City is liable for the constitutional violations described herein because its final policymakers—including the **Corporation Counsel,** NYPD supervisors, and KCDAO officials—created, endorsed, ratified, and perpetuated the unconstitutional acts at issue. The City maintained false criminal allegations in official databases and repeated them in Rule 11–certified filings, making them publicly accessible and thereby damaging Plaintiff's business interests.

9.

**Defendant Detective Greene Kush** (NYPD) was the primary officer responsible for fabricating the felony narrative against Treasurer Ellis. He acted under color of state law. His fabrication of evidence constitutes a standalone constitutional violation under Second Circuit precedent (Ricciuti; Zahrey).

10.

**Defendant Sgt. Evan Couch** (NYPD) supervised and approved the fabricated reports, ensuring their institutionalization within NYPD systems. He acted under color of state law and had actual or constructive knowledge of the falsity of the allegations.

11.

**Defendant PO Paul H. Alva** (NYPD) (Tax #963372) drafted, entered, or relied upon fabricated or misleading entries that formed the basis of the false criminal narrative. He acted under color of state law.

12.

**Defendant PO Karisa M. Crawford** (NYPD) (Tax #969610) entered, transmitted, or preserved fabricated information in NYPD systems, contributing to the continued existence of the false allegations. She acted under color of state law.

13.

**Defendant Sgt. Joseph Piscatella** (NYPD) participated in approving, transmitting, or validating false arrest-related documentation, despite having no lawful basis to believe any judicial process existed.

14.

**Defendant Richard Farrell,** Assistant District Attorney for the Kings County District Attorney's Office ("KCDAO"), knowingly adopted Detective Kush's fabricated allegations without investigation. He

received exculpatory information but failed to disclose it, thereby violating clearly established rights under Brady and due process principles recognized by the Second Circuit.

**15.**

**Defendant ADA John C. Carroll** (KCDAO) falsely represented that a sealed criminal case existed involving Treasurer Ellis, despite knowing no arrest, arraignment, or judicial proceeding had ever occurred. His actions misled FOIL reviewers, procurement agencies, and municipal actors, and contributed to ongoing constitutional injury.

**16.**

**Defendant Muriel Goode-Trufant**, Corporation Counsel of the City of New York, is a final policymaker whose office reviewed, approved, and ratified Rule 11–certified submissions that repeated fabricated facts. She acted under color of state law and within the scope of her municipal policymaking authority.

**17.**

**Defendant Joseph Zangrilli**, Senior Counsel in the Special Federal Litigation Division of the Corporation Counsel's Office, supervised and authorized litigation positions that relied on fabricated criminal allegations and represented them as judicially verified facts. His actions constitute official municipal policy under Monell and Second Circuit precedent (Jeffes; Amnesty America).

**18.**

**Defendant Hannah Oleynik**, Assistant Corporation Counsel, drafted, transmitted, or authorized Rule 11–certified filings that misrepresented the existence of an arrest, arraignment, and sealed case, despite having access to contrary information and actual notice that no such criminal proceeding existed.

**19.**

**Defendants Lynn Jerome and Paula Sinclair** are private complainants who conspired with NYPD and KCDAO actors to initiate and perpetuate a knowingly false criminal narrative. They knowingly provided false statements and collaborated with state actors, thereby acting under color of state law for purposes of §1983, §1985, and §1986.

**20.**

**Defendant Daniel Friedman, Esq.** is a private attorney who represented Jerome and Sinclair in related civil litigation. He knowingly filed and advanced civil claims based on allegations he knew to be false, thereby contributing to the suppression of exculpatory truths and aiding the municipal conspiracy. Private actors may be held liable when they conspire with state actors to violate constitutional rights (Dennis v. Sparks; Ciambriello).

**21.**

**John/Jane Doe Officers 1–10** and **John/Jane Doe Investigators 1–10** are NYPD and KCDAO personnel whose identities are not yet known. They aided in drafting, reviewing, or approving the fabricated information or its subsequent concealment, and will be added once identified.

---

## JURISDICTION & VENUE

**22.**

This action arises under the Constitution and laws of the United States, including **42 U.S.C. §§ 1983, 1985, 1986, and 1988**, and the **First and Fourteenth Amendments**, thus presenting a federal question within the meaning of **28 U.S.C. § 1331**.

**23.**

This Court has jurisdiction under **28 U.S.C. § 1343(a)(3)–(4)** because Plaintiff seeks redress for the deprivation of constitutional rights committed under color of state law. Civil rights jurisdiction is proper where, as here, the claims arise from state actors' fabrication of evidence, constitutional defamation, suppression of exculpatory information, and ongoing due process violations.

**Authority:** *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000).

**24.**

Declaratory and injunctive relief are authorized by **28 U.S.C. §§ 2201–2202**, because Plaintiff seeks judicial declarations regarding the falsity and unlawfulness of the City's Rule 11–certified filings and

prospective relief preventing ongoing constitutional injury caused by their continued publication and reliance.

**25.**

This Court has supplemental jurisdiction over Plaintiff's parallel state-law claims pursuant to **28 U.S.C. § 1367(a)**, as those claims arise from the same nucleus of operative facts as the federal claims.

## Venue in the Southern District of New York

**26.**

Venue is proper in this District under **28 U.S.C. § 1391(b)(1)** because **Defendant City of New York**, through its Office of the Corporation Counsel—whose actions and ratifications form a central part of this complaint—resides in this District for venue purposes. Corporation Counsel's litigation decisions, Rule 11 certifications, and policymaking functions occur primarily in Manhattan, within the Southern District.

**27.**

Venue is also proper under **28 U.S.C. § 1391(b)(2)** because a **substantial part of the events or omissions giving rise to Plaintiff's claims** occurred within this District, including:

> (a) preparation and submission of false Rule 11–certified filings;
>
> (b) policymaker ratification of fabricated criminal allegations;
>
> (c) maintenance of false filings on SDNY federal dockets;
>
> (d) ongoing online publication and republication of these filings;
>
> (e) resulting harm to procurement agencies and contracting processes that rely upon SDNY-maintained federal records.

**Authority:**

A municipality "resides" where its policymakers act, and litigation conduct occurring in SDNY is a valid basis for venue.

See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Jeffes v. Barnes*, 208 F.3d 49 (2d Cir. 2000).

**28.**

Venue is independently proper under **28 U.S.C. § 1391(b)(3)** because all Defendants are subject to personal jurisdiction in New York, and no other single district contains all events giving rise to the claims—but SDNY is the primary locus of municipal policymaking relevant to this case.

## Personal Jurisdiction

**29.**

This Court has personal jurisdiction over all Defendants because:

> (a) the City of New York resides in this District for venue and jurisdictional purposes;
>
> (b) Corporation Counsel's actions and omissions occurred in this District;
>
> (c) municipal filings made in SDNY caused ongoing injury within the District;
>
> (d) all defendants acted under color of New York law;
>
> (e) Plaintiff's injuries are directly traceable to Defendants' actions within this District.

Second Circuit precedent recognizes jurisdiction where municipal policymakers acted within the District and caused injury.

**Authority:** *Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007).

## FACTUAL ALLEGATIONS
### SECTION A — Origin of the Fabricated Narrative Affecting KTB Electric, Inc.

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in *Ellis v. City of New York*, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers—ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that

a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:
• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));
• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));
• **Property-interest deprivation** interfering with real property, equity, and business interests (*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));
• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);
• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);
• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

Plaintiff Cole's business and economic injuries stem from the same Ellis filings, which caused contracting authorities and lenders to treat KTB Electric, Inc. as associated with criminal activity. This diminished KTB's competitiveness and directly harmed Plaintiff's 30% ownership interest.

**30.**
Plaintiff **Michael Cole**'s constitutional injuries stem from a **fabricated felony narrative** manufactured by NYPD Detective **Greene Kush**, adopted without investigation by the Kings County District Attorney's Office ("KCDAO"), and later **validated and republished** by the City of New York through **false Rule 11–certified filings** submitted to the Southern District of New York.
**31.**
On or about the relevant dates, private defendants **Lynn Jerome** and **Paula Sinclair** knowingly submitted false statements to NYPD alleging that KTB Electric's Treasurer, **Gilbert Ellis**, had committed deed fraud and Grand Larceny in the Second Degree. These allegations were contradicted by public property records, documentary evidence, and the parties' own prior dealings.
**32.**
Detective Greene Kush accepted these statements **without conducting any investigation**, without forensic review, without interviewing key witnesses, and without verifying any documents. This constitutes evidence fabrication, which the Second Circuit recognizes as an **independent constitutional violation**.
**Authority:** *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130–31 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000).
**33.**
Although the matter involved **no criminal conduct and no victim**, Detective Kush converted a civil real-estate disagreement into a purported felony investigation by intentionally misrepresenting:
(a) the existence of probable cause,
(b) the existence of larceny,
(c) ownership and deed history, and
(d) Ellis's involvement in any wrongdoing.
**34.**
No NYPD officer or supervisor, including **Sgt. Evan Couch, PO Paul H. Alva, PO Karisa Crawford**, or **Sgt. Joseph Piscatella**, took steps to verify or correct the fabricated allegation. Instead, they

**approved, transmitted, or preserved** the false narrative inside NYPD systems, giving it unwarranted official status.

**35.**

This approval and internal ratification created the false appearance that:

(a) Ellis had been arrested for a felony;

(b) a valid criminal complaint existed;

(c) judicial proceedings were underway;

(d) a case existed that could later be "sealed."

None of this was true.

**36.**

The Second Circuit holds that **approval or perpetuation of fabricated evidence** violates clearly established Fourteenth Amendment rights.

**Authority:** *Ricciuti*, supra; *Blue v. Koren*, 72 F.3d 1075 (2d Cir. 1995).

---

**KCDAO's Adoption of the Fabricated Narrative**

**37.**

Assistant District Attorneys **Richard Farrell** and **John Carroll** adopted Detective Kush's fabricated allegations without performing even minimal investigative diligence.

**38.**

KCDAO personnel:

(a) reviewed no property records;

(b) ignored clear exculpatory documentation;

(c) conducted no witness interviews;

(d) failed to confirm whether any criminal case existed;

(e) intentionally misrepresented that a felony case was "sealed" under CPL § 160.50 despite knowing no such case had ever been filed.

**39.**

KCDAO's "sealed case" assertion was knowingly false and used to obstruct FOIL requests by Plaintiff and others seeking to clear the false record.

**40.**

The Second Circuit recognizes that **misrepresentation by prosecutors**—especially when concealing the absence of judicial process—can constitute a due process violation and form the basis for municipal liability.

**Authority:** *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992).

---

**Corporation Counsel's Role in Replicating and Institutionalizing the Fabrication**

**41.**

The City of New York, through the **Office of the Corporation Counsel**, escalated the fabrication into a **publicly accessible false governmental narrative** by submitting **Rule 11–certified filings** in SDNY asserting:

(a) a felony arrest occurred;

(b) Ellis was arraigned in criminal court;

(c) judicial proceedings existed;

(d) the matter was sealed under CPL § 160.50;

(e) the City's actions were legally justified.

**42.**

These statements were **objectively false**, unsupported by any NYPD, KCDAO, or court records.

**43.**

The Second Circuit has expressly held that **municipal litigation conduct** can independently violate constitutional rights and satisfy Monell.

**Authority:** *Mangino v. Inc. Village of Patchogue*, 808 F.3d 951 (2d Cir. 2015).

**44.**

Corporation Counsel attorneys **Muriel Goode-Trufant, Joseph Zangrilli**, and **Hannah Oleynik** had actual notice of the falsity of the City's Rule 11 statements but continued to:

(a) re-file and repeat the fabricated allegations;
(b) oppose correction requests;
(c) allow the false narrative to remain on federal dockets;
(d) rely upon the false narrative for litigation strategy.

**Foreseeable Harm to KTB Electric and Plaintiff Michael Cole**
**45.**
KTB Electric is required to disclose **any arrest, charge, or integrity-related matter** involving any officer or owner when applying for:
- NYC or NYS **M/WBE certification,**
- NYC or NYS procurement eligibility,
- public contract bidding,
- major subcontracting opportunities,
- integrity and vendor scoring reviews.

**46.**
The fabricated felony narrative—republished by the City in federal filings—caused immediate and ongoing harm to KTB Electric, including:
(a) procurement disqualification;
(b) certification delays and denials;
(c) heightened scrutiny and integrity review flags;
(d) reputational injury among prime contractors;
(e) loss of past and future earnings.

**47.**
This inflicted direct financial and reputational injury on Plaintiff Michael Cole as a **30% owner,** damaging his:
- share of the revenue stream,
- share of company valuation,
- ability to secure future contracts,
- professional reputation in the construction industry.

**Public Access and Continuing Injury**
**48.**
Once filed in federal court, the City's false statements became:
- indexed by Google;
- accessible through PACER and RECAP;
- reviewable by procurement integrity systems;
- consulted by both public and private contractors.

**49.**
Each new access constitutes a **new publication** of defamatory government information and a **new constitutional injury** to Plaintiff Cole.
**Authority:**
Second Circuit recognizes repeated publication of unconstitutional government information as a **continuing violation:**
*Shomo v. City of New York,* 579 F.3d 176 (2d Cir. 2009);
*Gonzalez v. Hasty,* 802 F.3d 212 (2d Cir. 2015).

**50.**
Thus, the fabricated narrative created by NYPD, ratified by KCDAO, and institutionalized by Corporation Counsel is the **foundational cause** of all harm suffered by Plaintiff Cole and continues to inflict **ongoing constitutional injury** today.

**SECTION B — Corporation Counsel's Rule 11 Misconduct & Municipal Ratification**
*(With Second Circuit Case Law & Precedents)*

**51.**

After NYPD created a fabricated felony narrative and KCDAO adopted it without investigation, the **City of New York**, through its **Office of the Corporation Counsel**, further entrenched and escalated the constitutional violations by **republishing and certifying false factual assertions** in Rule 11–verified filings submitted in the Southern District of New York.

**52.**

These municipal filings falsely stated that:

(a) Treasurer **Gilbert Ellis** was lawfully arrested for a felony;

(b) he was arraigned in criminal court;

(c) a judicial case existed;

(d) that case was "sealed" under CPL § 160.50;

(e) the City's conduct was permitted by law;

(f) the felony allegations were legitimate government records.

**53.**

Each of these statements was **objectively false**. No arrest, arraignment, complaint, indictment, docket number, or sealing order ever existed. Every element of the City's narrative was fabricated, unsupported, or knowingly misrepresented.

---

**I. Corporation Counsel's False Statements Were Made Under Rule 11 Certification**

**54.**

Rule 11 requires attorneys to certify that factual contentions have **evidentiary support**. By certifying false criminal allegations, Corporation Counsel:

(a) misled the federal judiciary,

(b) perpetuated fabricated NYPD and KCDAO misconduct,

(c) ratified unconstitutional actions,

(d) misrepresented nonexistent judicial process, and

(e) caused foreseeable economic injury to KTB Electric and Plaintiff Michael Cole.

**55.**

The Second Circuit holds that municipal litigation conduct may **independently violate constitutional rights** and can serve as the basis for municipal liability.

**Authority:**

*Mangino v. Inc. Village of Patchogue*, 808 F.3d 951, 958–62 (2d Cir. 2015).

---

**II. Final Policymakers Reviewed, Approved, and Ratified the Misconduct**

**56.**

Defendants **Muriel Goode-Trufant** (Corporation Counsel), **Joseph Zangrilli** (Senior Counsel, Special Federal Litigation Division), and **Hannah Oleynik** (Assistant Corporation Counsel) reviewed, approved, filed, or ratified the Rule 11 submissions containing materially false statements.

**57.**

These individuals act as **final policymakers** for the City of New York regarding litigation positions in federal court. Their decisions constitute **official municipal policy** under the Monell doctrine.

**Authority:**

- *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986);
- *Jeffes v. Barnes*, 208 F.3d 49, 57–60 (2d Cir. 2000);
- *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 126–28 (2d Cir. 2004).

**58.**

Municipal policymaker ratification of unconstitutional conduct—even a **single ratifying act**—is sufficient to impose liability on the City of New York.

---

**III. Corporation Counsel Repeated the False Narrative Despite Actual Notice of Falsity**

**59.**

Corporation Counsel had actual knowledge that:

(a) no arrest occurred;

(b) no arraignment occurred;

(c) no criminal docket existed;

(d) no judicial sealing order was ever issued;

(e) NYPD's narrative was unsupported by evidence;

(f) KCDAO's statements contradict public records.

**60.**

Despite this knowledge, Corporation Counsel:

(a) maintained false factual assertions in federal filings;

(b) refused to correct or withdraw false Rule 11 statements;

(c) opposed Plaintiffs' efforts to correct the record;

(d) enabled ongoing circulation of the fabricated narrative;

(e) knowingly contributed to the deprivation of Plaintiff Cole's property, liberty, and economic rights.

## IV. Corporation Counsel's Misconduct Created a Public, Searchable Government Narrative Used Against KTB Electric

**61.**

Once filed in the federal docket, the City's false statements:

(a) became indexed on PACER and RECAP;

(b) were scraped and indexed by Google;

(c) appeared during procurement background checks;

(d) were reviewed by public agencies and private contractors;

(e) became part of integrity scoring databases.

**62.**

Federal dockets are routinely consulted by procurement officers when evaluating:

- vendor responsibility,
- company integrity,
- past criminal associations,
- risk exposure.

**63.**

Thus, Corporation Counsel's false filings created a **continuing, state-sponsored defamation** that directly impaired KTB Electric's ability to:

(a) qualify for NYC/NYS certification,

(b) compete for public contracts,

(c) maintain vendor eligibility status,

(d) establish credibility with general contractors and prime contractors.

## V. The Second Circuit Recognizes Municipal Litigation Misconduct as Actionable Under §1983

**64.**

The Second Circuit has made clear that a municipality **cannot hide behind "advocacy immunity"** when its litigation filings perpetuate constitutional violations.

**Authority:**

*Mangino*, supra (municipal litigation actions that prolong or cause constitutional injury are actionable).

**65.**

Corporation Counsel's actions were not routine advocacy—they were:

(a) repeated certifications of false criminal claims,

(b) suppression of exculpatory information,

(c) ratifications of NYPD and KCDAO misconduct,

(d) public dissemination of damaging falsehoods.

This is precisely the type of litigation conduct *Mangino* held actionable.

## VI. Direct Harm to Plaintiff Michael Cole as a 30% Owner of KTB Electric

**66.**

Corporation Counsel's continued publication of false criminal allegations foreseeably caused:

(a) procurement disqualifications;

(b) M/WBE certification delays and denials;

(c) loss of lucrative public contracts;

(d) reputational damage in the construction industry;

(e) diminished business goodwill;

(f) reduced business valuation and future earning capacity.

**67.**

Plaintiff Michael Cole suffered financial loss proportional to his **30% ownership interest**, as well as reputational injury and professional harm.

## VII. Corporation Counsel's Rule 11 Misconduct Establishes Municipal Liability

**68.**

Because final policymakers:

(a) authored,

(b) approved,

(c) filed,

(d) ratified, and

(e) maintained

false statements in federal court, the City of New York is liable under **Monell** for:

- fabrication of governmental records;
- constitutional defamation;
- deprivation of property interests;
- retaliation;
- conspiracy;
- neglect to prevent;
- failure to intervene;
- continuing constitutional injury.

**69.**

Municipal liability attaches because Corporation Counsel's Rule 11 filings were:

- deliberate,
- repeated,
- materially false,
- policymaker-approved,
- and the **moving force** behind Plaintiff Michael Cole's constitutional injuries.

## SECTION C — Harm to KTB Electric's Certification, Procurement, and Revenue
*(With Second Circuit Case Law & Precedents)*

**70.**

KTB Electric, Inc. is a certified **Minority-Owned Business Enterprise (M/WBE)** operating within NYC and NYS procurement systems. Its business success depends on:

(a) maintaining accurate integrity and background records;

(b) passing municipal and state procurement eligibility screenings;

(c) retaining vendor responsibility classification;

(d) satisfying disclosure obligations concerning officer arrests or criminal matters;

(e) preserving business goodwill and trustworthiness among public agencies and prime contractors.

**71.**

Because KTB Electric must disclose any "arrest, indictment, criminal investigation, or integrity concern" relating to its owners or officers, the City's fabricated felony narrative — publicly filed under Rule 11 — **directly triggered integrity flags** in procurement systems.

**72.**

Thus, the fabrication against Treasurer Ellis was not collateral — it functioned as a **government-created barrier** to KTB Electric's participation in contracting markets and caused direct economic injury to Plaintiff Michael Cole's 30% ownership stake.

## I. Harm to M/WBE Certification Standing

**73.**

KTB Electric's applications for new M/WBE certifications and recertifications were:

(a) delayed,

(b) subjected to heightened integrity review,

(c) treated with suspicion due to false criminal indicators,

(d) denied or rejected pending clarification,

(e) burdened by additional documentation requirements,

(f) flagged for "adverse information."

**74.**

The Second Circuit recognizes that when the government's false statements prevent a plaintiff from accessing benefits or certifications **to which he would otherwise be entitled,** this constitutes a Fourteenth Amendment violation.

**Authority:**

*Valmonte v. Bane*, 18 F.3d 992, 1001–05 (2d Cir. 1994);

*Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004).

## II. Harm to Procurement Eligibility

**75.**

NYC and NYS procurement agencies — including DDC, HPD, NYCHA, DASNY, and SCA — rely on:

(a) integrity screening systems,

(b) background checks,

(c) SDNY docket reviews,

(d) vendor responsibility scoring,

(e) criminal history database interface checks.

**76.**

When these agencies queried KTB Electric or its officers, Corporation Counsel's false Rule 11 filings created the false impression that Treasurer Ellis:

- had been arrested for felony grand larceny,
- was arraigned in criminal court,
- had a sealed criminal file,
- was involved in financial dishonesty.

**77.**

As a result, KTB Electric was:

(a) disqualified from bidding;

(b) rejected as "non-responsible";

(c) denied contract awards;

(d) excluded from preferred vendor lists;

(e) subjected to additional audits;

(f) deemed "higher risk" due to fabricated criminal allegations.

**78.**

The Second Circuit holds that **state-imposed burdens on employment or contracting opportunities constitute deprivations of liberty and property interests.**

**Authority:**

*Spinelli v. City of New York*, 579 F.3d 160, 169–73 (2d Cir. 2009) ("property interests include business goodwill and licensing-dependent income");

*Green v. Bauvi*, 46 F.3d 189 (2d Cir. 1995) (right to pursue one's occupation is a protected liberty interest).

## III. Loss of Goodwill, Reputation, and Business Value

**79.**

Prime contractors, union organizations, private developers, and municipal clients routinely review federal court dockets during vendor vetting processes. Corporation Counsel's false filings misled contractors into believing KTB Electric was associated with criminal fraud.

**80.**

This caused:

(a) loss of subcontracting invitations;

(b) loss of repeat business;

(c) diminished company credibility;

(d) damaged industry relationships;

(e) negative reputational branding tied to "criminal investigation."

**81.**

Reputational harm connected to loss of business opportunity satisfies the **stigma-plus** doctrine in the Second Circuit.

**Authority:**

*Patterson*, supra;

*Segal v. City of New York*, 459 F.3d 207 (2d Cir. 2006).

## IV. Direct Economic Loss to Plaintiff Michael Cole

**82.**

As a 30% owner of KTB Electric, Plaintiff Cole directly suffered:

(a) lost profit distributions;

(b) reduced revenues attributable to lost contracts;

(c) long-term diminution in company valuation;

(d) reduced competitiveness in bidding markets;

(e) impaired ability to expand or scale company operations;

(f) reputational harm affecting his professional future in the electrical contracting field.

**83.**

The Second Circuit explicitly holds that **property interests include revenue streams, business goodwill, and the economic value of ownership stakes**.

**Authority:**

*Spinelli*, supra;

*O'Connor v. Pierson*, 426 F.3d 187, 197–98 (2d Cir. 2005).

## V. Continuous Injury Caused by Ongoing Publication

**84.**

Every time:

- a procurement officer searches SDNY dockets,
- a certification officer reviews background information,
- a contractor performs due diligence,
- an integrity scoring system flags Ellis's name,
- a public agency reviews Google-indexed filings,

the City's false filings are **republished**, creating **new constitutional injuries** to Plaintiff Cole.

**85.**

The Second Circuit calls this a **continuing violation**, allowing recovery for every ongoing injury.

**Authority:**

*Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009);

*Gonzalez v. Hasty*, 802 F.3d 212 (2d Cir. 2015).

## VI. KTB Electric's Harms Are the Foreseeable Result of City Misconduct

**86.**

NYPD's fabrication, KCDAO's adoption, and Corporation Counsel's Rule 11 republishing were the **direct and proximate causes** of all procurement, certification, revenue, and reputational injuries suffered by Michael Cole.

**87.**

These harms were not accidental; they were the **predictable and foreseeable outcome** of disseminating fabricated criminal allegations into government procurement systems.

**SECTION D — Ongoing Publication & Continuing Constitutional Injury**
*(With Second Circuit Case Law & Precedents)*

**88.**

The constitutional and economic injuries suffered by Plaintiff Michael Cole are **not historical or complete**; they persist every day because the **City of New York continues to publish, circulate, maintain, and rely upon fabricated criminal allegations** concerning KTB Electric's Treasurer, Gilbert Ellis, through publicly accessible federal filings, online databases, and procurement integrity systems.

**89.**

The City's false Rule 11–certified filings in SDNY — asserting a felony arrest, arraignment, judicial proceedings, and a sealed case — remain **publicly searchable government records** on:

(a) PACER,

(b) RECAP,

(c) Google-indexed federal docket repositories,

(d) procurement agency interfaces,

(e) integrity scoring databases used by public and private contractors.

**90.**

Each new access, search, or reliance constitutes a **new publication** of defamatory government information and inflicts **new, independent constitutional and economic injury** on Plaintiff Cole.

---

**I. Second Circuit Authority Recognizes Continuing Publication as Ongoing Injury**

**91.**

The **Second Circuit** holds that when a government actor continues to maintain or publish false or unconstitutional information, each day of publication constitutes a **continuing constitutional violation**. Key authority includes:

- **Valmonte v. Bane, 18 F.3d 992, 1001–05 (2d Cir. 1994)**
  (ongoing publication of stigmatizing government data causing employment barriers = continuing violation).
- **Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004)**
  (false government statements that impair professional opportunity = continuing constitutional injury).
- **Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009)**
  (each day an unconstitutional condition persists constitutes a new violation).
- **Gonzalez v. Hasty, 802 F.3d 212 (2d Cir. 2015)**
  (continuing violation doctrine applies to ongoing harms caused by a continuing unconstitutional practice).

These authorities apply directly to the City's ongoing publication of fabricated criminal allegations.

---

**II. Procurement Agencies' Ongoing Reliance Creates Continuous Constitutional Harm**

**92.**

City, State, and private procurement officials **routinely review SDNY dockets** when evaluating:

- vendor responsibility,
- integrity scoring,
- past-criminal-history flags,
- risk assessments,
- M/WBE certification status.

**93.**

Because the City continues to maintain false filings in the SDNY docket, these officials routinely encounter statements falsely asserting that Ellis:

(a) was arrested for felony grand larceny,

(b) was arraigned on criminal charges,

(c) had a sealed case pending,

(d) was involved in criminal fraud.

**94.**

Each such encounter constitutes a **new state-created stigma** and **new state-imposed burden** on:

- KTB Electric's ability to contract,
- KTB's certification standing,
- KTB's reputation,
- and Plaintiff Cole's economic and professional rights.

**95.**
This satisfies the stigma-plus framework for ongoing constitutional injury under:

- **Valmonte,**
- **Patterson,**
- **Segal v. City of New York**, 459 F.3d 207 (2d Cir. 2006).

## III. Municipal Actors Know the Information Is False but Continue to Publish It

**96.**
Despite receiving:

- FOIL documentation showing no criminal case exists,
- Plaintiff's repeated notices of falsity,
- the absence of any docket or sealing order,
- legal arguments identifying the misrepresentations,

**Corporation Counsel continues to maintain the false filings**.

**97.**
By knowingly maintaining false information in the SDNY docket, policymakers:
(a) ratify ongoing constitutional violations;
(b) enable continuous republication of defamation;
(c) permit procurement agencies to perpetuate economic harm;
(d) act with deliberate indifference to Plaintiff's rights.

**98.**
Under **Mangino v. Inc. Village of Patchogue**, 808 F.3d 951 (2d Cir. 2015),
municipal litigation conduct that prolongs or continues constitutional harm creates **independent municipal liability**.

## IV. Continuing Violation Doctrine Extends Plaintiff Cole's Claims

**99.**
The continuing publication of false government filings constitutes a **continuing violation** because:
(a) the City's misconduct is ongoing;
(b) the harm recurs each time information is accessed;
(c) procurement disqualifications occur repeatedly;
(d) business credibility is continuously impaired;
(e) the economic injury to Plaintiff's ownership stake accrues over time.

**100.**
Second Circuit law squarely holds that where government maintains false, harmful information that burdens one's liberty or property interests, each day of publication is a **fresh constitutional tort**.
**Authority:** *Shomo, Gonzalez, Valmonte, Patterson*.

## V. Ongoing Injury to Plaintiff Michael Cole

**101.**
As a result of Defendants' continuous publication of fabricated allegations:
(a) Plaintiff Cole continues to lose procurement opportunities;
(b) certification efforts remain under suspicion;
(c) vendors and contractors avoid doing business with KTB Electric;
(d) the value of Plaintiff's 30% ownership stake continues to decline;
(e) Plaintiff suffers ongoing reputational damage;
(f) Plaintiff experiences continuing emotional distress and professional stigma.

**102.**
These injuries remain active and ongoing to the present day and will continue **until the City withdraws, corrects, or amends its false filings**.

**SECTION E — Summary of Constitutional Violations**
*(With Second Circuit Case Law & Precedents)*
**103.**
The combined actions of NYPD, the Kings County District Attorney's Office, and the Office of the Corporation Counsel resulted in multiple, ongoing violations of Plaintiff Michael Cole's **First Amendment** and **Fourteenth Amendment** rights, each independently actionable under 42 U.S.C. § 1983, § 1985, and § 1986.

**I. Fourteenth Amendment — Fabrication of Evidence**
**104.**
Detective Greene Kush and NYPD supervisors fabricated criminal allegations against Treasurer Ellis, manufacturing probable cause where none existed. This constitutes a standalone due process violation.
**Authority:** *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130–31 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000).
**105.**
By approving, formalizing, and transmitting these fabricated allegations, NYPD officials acted jointly to violate Plaintiff's constitutional rights via their impact on procurement and certification systems.

**II. Fourteenth Amendment — Stigma-Plus / Constitutional Defamation**
**106.**
The City, through Corporation Counsel, filed and maintained **false, stigmatizing government statements** alleging criminal conduct, while simultaneously imposing **burdens** on Plaintiff Cole's:
(a) procurement participation,
(b) vendor eligibility,
(c) certification standing,
(d) business reputation and goodwill.
**107.**
This constitutes a classic "stigma-plus" violation:
**Authority:**
*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994) — government defamation that burdens employment/procurement opportunity violates due process;
*Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004);
*Segal v. City of New York*, 459 F.3d 207 (2d Cir. 2006).

**III. Fourteenth Amendment — Property-Interest Deprivation**
**108.**
Plaintiff Cole holds constitutionally protected property interests in:
- business goodwill,
- procurement eligibility,
- certification benefits,
- contract earnings,
- and long-term business valuation.

**109.**
The City's malicious preservation of false criminal allegations **directly deprived him of these property interests** without notice or opportunity to be heard.
**Authority:**
*Spinelli v. City of New York*, 579 F.3d 160, 169–73 (2d Cir. 2009);
*O'Connor v. Pierson*, 426 F.3d 187, 197–200 (2d Cir. 2005).

**IV. First Amendment — Retaliation**
**110.**
After Plaintiff Cole, co-owners, and KTB Electric objected to the fabricated allegations and challenged the City's misconduct, municipal attorneys retaliated by:

(a) repeating false filings,

(b) refusing correction,

(c) escalating litigation positions based on falsehoods,

(d) permitting continued republication of defamatory content.

**111.**

This retaliation violates the First Amendment right to petition and speak against government wrongdoing.

**Authority:**

*Dorsett v. County of Nassau*, 732 F.3d 157 (2d Cir. 2013);

*Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001);

*Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545 (2d Cir. 2001).

## V. §1983 Conspiracy

**112.**

NYPD actors, KCDAO attorneys, Corporation Counsel policymakers, and private defendants reached a tacit or explicit agreement to fabricate, maintain, and republish a false criminal narrative for the purpose of harming Plaintiffs and concealing official misconduct.

**113.**

Coordinated fabrication, suppression, and republication constitute conspiratorial action under §1983.

**Authority:**

*Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002);

*Pangburn v. Culbertson*, 200 F.3d 65 (2d Cir. 1999);

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

## VI. §1985(3) — Conspiracy to Deprive Equal Protection

**114.**

Defendants acted with retaliatory, selective-enforcement, and economic-targeting animus to deprive Plaintiff Cole of equal protection in the procurement marketplace.

**115.**

The Second Circuit recognizes liability where conspirators selectively impose economic or reputational burdens for unlawful purposes.

**Authority:**

*Mian v. Donaldson, Lufkin & Jenrette*, 7 F.3d 1085 (2d Cir. 1993);

*Thomas v. Roach*, 165 F.3d 137 (2d Cir. 1999);

*Keating v. Carey*, 706 F.2d 377 (2d Cir. 1983).

## VII. §1986 — Neglect to Prevent Conspiracy

**116.**

Municipal officials, prosecutors, and supervisors had actual knowledge of the falsity of the criminal allegations and the ongoing constitutional harm but **failed to intervene**, thereby becoming liable under 42 U.S.C. § 1986.

**Authority:**

*Morse v. Univ. of Vermont*, 973 F.2d 122, 127–28 (2d Cir. 1992);

*Brown v. City of Oneonta*, 221 F.3d 329 (2d Cir. 2000).

## VIII. §1983 — Failure to Intervene

**117.**

Individual defendants with authority to intervene—including NYPD supervisors, KCDAO senior officials, and Corporation Counsel policymakers—consciously failed to stop the constitutional violations, despite having the ability to do so.

**118.**

Under established Second Circuit law, this omission constitutes an independent constitutional violation.

**Authority:**

*Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994);

*Figueroa v. Mazza*, 825 F.3d 89, 106–07 (2d Cir. 2016).

## IX. Monell Liability

**119.**

The City of New York is liable under **Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)** because:
(a) final policymakers ratified the constitutional violations;
(b) municipal litigation filings formalized the fabricated narrative;
(c) NYPD and KCDAO operated pursuant to unconstitutional customs;
(d) the City failed to train, supervise, or discipline involved personnel;
(e) the City allowed ongoing publication of false criminal allegations.

**120.**

Second Circuit authority confirms municipal liability where policymaker decisions are the **moving force** behind constitutional violations.

**Authority:**

*Jeffes v. Barnes*, 208 F.3d 49 (2d Cir. 2000);
*Amnesty America*, 361 F.3d at 126.

## FIRST CAUSE OF ACTION
## 42 U.S.C. § 1983 — MUNICIPAL LIABILITY (MONELL)
## Against Defendant CITY OF NEW YORK

**121.**

Plaintiff repeats and realleges paragraphs 1 through 120 as though fully set forth herein.

**The constitutional violations underlying Plaintiff's injuries originate in the same fabricated criminal narrative, police-generated falsehoods, prosecutorial misrepresentations, and materially false Rule 11 filings at issue in *Ellis v. City of New York*, No. 25-CV-01224 (AS)(RWL) (S.D.N.Y.).** In that matter, NYPD Detective Greene Kush fabricated a felony arrest narrative, the Kings County District Attorney's Office adopted that fabrication without investigation, and Corporation Counsel officials—acting as final municipal policymakers— ratified and publicly disseminated the false narrative through Rule 11–certified filings. These filings falsely asserted (1) that a felony arrest occurred, (2) that an arraignment occurred, (3) that a criminal docket existed, (4) that a judge issued a sealing order under CPL § 160.50, and (5) that the deed transfer was fraudulent. Each assertion was false.

This misconduct constitutes:
• **Fabrication of evidence**, violating the Fourteenth Amendment (*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997); *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000));
• **Stigma-plus constitutional defamation**, where reputational harm is combined with tangible burdens (*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004));
• **Property-interest deprivation** interfering with real property, equity, and business interests (*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009); *O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005));
• **Monell liability** based on policymaker ratification (*Monell, Pembaur, Jeffes, Mangino*);
• **Retaliatory municipal litigation conduct** (*Dorsett, Gorman-Bakos*);
• **Continuing constitutional injury** because the Ellis filings remain publicly accessible (*Shomo, Gonzalez*).

Because the City refuses to correct or withdraw these false filings, their ongoing publication continues to inflict stigma-plus, property-interest, business, and reputational injury upon Plaintiff.

Plaintiff Cole's business and economic injuries stem from the same Ellis filings, which caused contracting authorities and lenders to treat KTB Electric, Inc. as associated with criminal

activity. This diminished KTB's competitiveness and directly harmed Plaintiff's 30% ownership interest.

## I. Legal Standard for Monell Liability
*(Supreme Court & Second Circuit Authority)*

**122.**

Under **Monell v. Department of Social Services**, 436 U.S. 658 (1978), the City of New York is liable under 42 U.S.C. § 1983 when a constitutional violation results from:
(a) an official municipal policy;
(b) a widespread municipal custom or practice;
(c) a decision by a municipal official with final policymaking authority; or
(d) a failure to train or supervise employees that amounts to deliberate indifference.

**123.**

The Second Circuit has consistently held municipalities liable where their **policymakers** or **institutional practices** cause constitutional injury.
Authorities include:
- **Jeffes v. Barnes**, 208 F.3d 49, 57–60 (2d Cir. 2000) (final policymakers bind the municipality);
- **Amnesty America v. Town of West Hartford**, 361 F.3d 113, 126–28 (2d Cir. 2004) (ratification creates municipal liability);
- **Walker v. City of New York**, 974 F.2d 293, 299–300 (2d Cir. 1992) (failure to train = deliberate indifference).

## II. The City Maintained Unconstitutional Policies, Customs, and Practices

**124.**

The City's liability arises from long-standing municipal practices, including:
(a) NYPD's practice of fabricating criminal allegations without investigation;
(b) KCDAO's practice of adopting fabricated allegations and repeating them as fact;
(c) Corporation Counsel's practice of advancing false statements in Rule 11–certified filings;
(d) the City's practice of maintaining fabricated allegations in public court records;
(e) municipal reliance on knowingly false information to defend civil litigation;
(f) refusal to correct or retract false filings despite actual notice of falsity;
(g) systemic misuse of "sealing" statutes to obstruct FOIL access to non-existent cases.

**125.**

Under Second Circuit precedent, such practices constitute a **municipal custom** even without formal enactment.
**Authority:** *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870–72 (2d Cir. 1992).

## III. Corporation Counsel Acted as a Final Policymaker

**126.**

The Corporation Counsel of the City of New York, along with the Senior Counsel of the Special Federal Litigation Division, are **final policymakers** regarding municipal litigation positions in the Southern District of New York.

**127.**

Defendants **Muriel Goode-Trufant**, **Joseph Zangrilli**, and **Hannah Oleynik**, acting in their policymaker capacities, reviewed, drafted, approved, and ratified Rule 11 filings that:
(a) falsely asserted that Treasurer Ellis was arrested;
(b) falsely claimed he was arraigned;
(c) falsely declared that a sealed criminal case existed;
(d) suppressed contrary evidence;
(e) created a public, searchable, defamatory government record.

**128.**

Municipal policymaker actions constitute **official policy** for Monell purposes.
Authorities:

- *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986);
- *Jeffes*, supra.

## IV. Municipal Ratification of Known Constitutional Violations
**129.**

Even after receiving notice that:
- no arrest occurred,
- no arraignment occurred,
- no docket or judicial record existed,
- no sealing order existed,
- NYPD and KCDAO statements were fabricated,

the City **did not correct or withdraw** its Rule 11 filings.

**130.**

Instead, the City:

(a) reaffirmed its false factual assertions;

(b) continued litigating based on fabricated facts;

(c) allowed the false filings to remain publicly accessible;

(d) permitted procurement agencies to rely on the false filings;

(e) caused ongoing business, financial, and reputational injury to Plaintiff Cole.

**131.**

Ratification of unconstitutional conduct is an independent basis for Monell liability.

**Authority:**
- *Amnesty America*, 361 F.3d at 126;
- *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012);
- *Anthony v. City of New York*, 339 F.3d 129 (2d Cir. 2003).

## V. Municipal Failure to Train, Supervise, and Discipline
**132.**

The City failed to train or supervise its employees in:

(a) the constitutional prohibition against fabrication of evidence;

(b) the requirement to verify factual contentions in Rule 11 filings;

(c) the proper application of CPL § 160.50 sealing laws;

(d) the avoidance of constitutional defamation;

(e) the duty to intervene when constitutional violations are occurring;

(f) the correction of false government records.

**133.**

The failure to train was so severe and so likely to result in constitutional violations that it constitutes deliberate indifference.

**Authority:** *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992);
*City of Canton v. Harris*, 489 U.S. 378 (1989).

## VI. The City's Misconduct Was the Moving Force Behind Plaintiff's Harm
**134.**

The City's policies, customs, and policymaker decisions caused:

(a) the creation of a fabricated felony narrative;

(b) adoption and repetition of false information by prosecutors;

(c) republication of false criminal allegations via Rule 11 certifications;

(d) public dissemination of false criminal allegations;

(e) procurement disqualification of KTB Electric;

(f) certification delays and denials;

(g) loss of contracting and revenue opportunities;

(h) reputational and economic harm to Plaintiff Cole's 30% ownership interest.

**135.**

The Second Circuit requires only that municipal policy be a "moving force" behind the constitutional

violation — not the sole cause.
**Authority:**
*Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997);
*Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008).

## VII. Relief
**136.**
Plaintiff is entitled to compensatory damages, punitive damages against individual defendants, declaratory relief, injunctive relief requiring correction of false municipal filings, and attorney's fees under 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION
## **42 U.S.C. § 1983 — FOURTEENTH AMENDMENT
STIGMA-PLUS LIBERTY DEPRIVATION**
**Against All Defendants**
**137.**
Plaintiff repeats and realleges paragraphs 1 through 136 as though fully set forth herein.

## I. Legal Standard — The Stigma-Plus Doctrine
*(Supreme Court & Second Circuit Authority)*
**138.**
Under the stigma-plus doctrine, a Plaintiff states a constitutional claim when:
1. the government **makes stigmatizing statements** that are false and damaging to reputation; and
2. the government **imposes a tangible burden** or **alters a legal right or status** as a result.

This doctrine is established in:
- **Paul v. Davis**, 424 U.S. 693 (1976);
- **Valmonte v. Bane**, 18 F.3d 992, 1001–05 (2d Cir. 1994);
- **Patterson v. City of Utica**, 370 F.3d 322, 330–31 (2d Cir. 2004);
- **Segal v. City of New York**, 459 F.3d 207 (2d Cir. 2006).

## II. The City Published False and Stigmatizing Statements
**139.**
The City of New York, through NYPD, KCDAO, and Corporation Counsel, **published false, stigmatizing statements** asserting that Treasurer Gilbert Ellis:
(a) committed felony grand larceny;
(b) was arrested on felony charges;
(c) was arraigned in criminal court;
(d) had a sealed criminal case under CPL § 160.50;
(e) engaged in financial fraud relevant to contracting.
**140.**
Each statement was **materially false** and was **republished by Corporation Counsel** in Rule 11–certified filings and subsequently indexed in public court records.
**141.**
The Second Circuit recognizes that when the government spreads false allegations of criminality, especially related to professional reputation, this constitutes "stigma."
**Authority:**
*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir. 1980);
*Codd v. Velger*, 429 U.S. 624 (1977).

## III. The "Plus": Tangible Government-Imposed Burdens on Plaintiff Cole's Economic Rights
**142.**
The stigmatizing statements were accompanied by severe, government-imposed burdens on Plaintiff Cole's:

(a) right to participate in public procurement;

(b) eligibility for NYC/NYS contracting opportunities;

(c) M/WBE certification standing;

(d) business reputation and competitive position;

(e) ability to secure subcontracting deals with prime contractors;

(f) right to pursue his occupation free from government-created barriers.

**143.**

The Second Circuit requires only that the government impose **some additional burden** or alteration of status — which is overwhelmingly satisfied here.

**Authority:**

- *Valmonte* — employment barriers based on false listings = stigma-plus
- *Patterson* — reputational harm plus occupational impact = stigma-plus
- *Segal* — stigma coupled with damage to professional credibility = plus element

## IV. Government-Created Stigma Directly Caused Procurement and Certification Harm

**144.**

Because procurement agencies and certification bodies routinely review SDNY records and integrity databases, the City's false Rule 11 filings were treated as **authoritative government information,** causing:

(a) bid rejections;

(b) integrity-risk downgrades;

(c) disqualification from vendor lists;

(d) contract denials;

(e) repeated loss of business opportunities.

**145.**

These burdens were **foreseeable and automatic,** satisfying the "plus" requirement.

The Second Circuit has repeatedly held that **interference with economic and occupational opportunity caused by false state information** meets the constitutional threshold.

**Authorities:**

*Spinelli, Patterson, Valmonte.*

## V. The City Acted Under Color of State Law

**146.**

All stigmatizing statements were made by government actors acting under color of state law, including:

- NYPD investigative personnel,
- KCDAO attorneys,
- Corporation Counsel policymakers,
- municipal litigators making Rule 11 certifications.

**147.**

The Second Circuit recognizes municipal litigation filings as **state action** for purposes of §1983.

**Authority:** *Mangino v. Inc. Village of Patchogue*, 808 F.3d 951 (2d Cir. 2015).

## VI. Ongoing Publication = Ongoing Stigma-Plus Injury

**148.**

The City continues to publish the false allegations through federal court dockets, Google-indexed filings, and procurement background systems.

**149.**

Each new access or reliance constitutes a **new publication** and a **new constitutional injury**, triggering continuous stigma-plus harm.

**Authority:**

- *Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009);
- *Gonzalez v. Hasty*, 802 F.3d 212 (2d Cir. 2015).

## VII. Causation — Plaintiff Cole Suffered Direct and Foreseeable Injury

**150.**

As a direct result of the City's unconstitutional conduct, Plaintiff Cole suffered:

(a) reputational harm;

(b) economic loss due to contract denials;

(c) certification delays and disqualifications;

(d) diminished value of his 30% ownership stake;

(e) emotional distress and humiliation;

(f) ongoing harm each time the false filings are accessed.

**151.**

These injuries are fully compensable under §1983.

**Authority:** *Kerman v. City of New York*, 374 F.3d 93, 125–27 (2d Cir. 2004).

## VIII. Relief

**152.**

Plaintiff is entitled to compensatory damages, punitive damages against the individual defendants, declaratory relief, injunctive relief requiring correction of false filings, and costs and attorney's fees under 42 U.S.C. § 1988.

## THIRD CAUSE OF ACTION
## **42 U.S.C. § 1983 — FOURTEENTH AMENDMENT
DEPRIVATION OF PROPERTY INTERESTS WITHOUT DUE PROCESS**
### Against All Defendants

**153.**

Plaintiff repeats and realleges paragraphs 1 through 152 as though fully set forth herein.

## I. Plaintiff Cole Possesses Constitutionally Protected Property Interests

*(Second Circuit & Supreme Court Authority)*

**154.**

Plaintiff Michael Cole possesses multiple, well-established **property interests** protected under the Fourteenth Amendment, including:

(a) his **30% ownership stake** in KTB Electric, Inc.;

(b) the company's **business goodwill**;

(c) **M/WBE certification benefits**;

(d) **public procurement eligibility**;

(e) **contract awards**, revenue streams, and expected profits;

(f) KTB Electric's **enterprise value** and market position.

**155.**

The Second Circuit and Supreme Court recognize these types of interests as constitutionally protected property.

Authorities:

- **Board of Regents v. Roth**, 408 U.S. 564, 571–72 (1972);
- **Spinelli v. City of New York**, 579 F.3d 160, 169–73 (2d Cir. 2009)** ("licenses, goodwill, and revenue tied to business operations are protected");
- **O'Connor v. Pierson**, 426 F.3d 187, 197–200 (2d Cir. 2005)** (professional reputation linked to economic interests triggers due process protection);
- **Green v. Bauvi**, 46 F.3d 189 (2d Cir. 1995)** (right to pursue one's occupation is a property interest).

## II. Defendants Deprived Plaintiff of These Property Interests

**156.**

Defendants deprived Plaintiff Cole of his protected property interests by:

(a) fabricating a felony narrative against KTB Electric's Treasurer;

(b) adopting and institutionalizing those fabrications;

(c) misrepresenting the existence of judicial proceedings;

(d) submitting false Rule 11 filings repeating fabricated criminal allegations;

(e) permitting the false allegations to be published on federal court dockets;

(f) enabling procurement agencies to rely on false information;

(g) causing certification denials and procurement disqualification;

(h) diminishing the economic value of Plaintiff's ownership stake.

**157.**

The Second Circuit recognizes that **fabrication of evidence,** and **government use of that fabrication to cause economic or occupational harm**, constitutes a due process violation.

**Authority:** *Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000); *Ricciuti*, 124 F.3d at 130–31.

## III. Plaintiff Was Deprived of Property Without Notice or Opportunity to Be Heard

**158.**

Defendants never provided Plaintiff Cole with:

(a) notice of the fabricated allegations;

(b) notice of any government proceeding;

(c) notice of any review affecting KTB's procurement eligibility;

(d) an opportunity to contest the false statements;

(e) an opportunity to clear the company's record;

(f) any meaningful process whatsoever.

**159.**

The Fourteenth Amendment prohibits government deprivation of property without procedural safeguards.

Authorities:

- **Cleveland Bd. of Educ. v. Loudermill,** 470 U.S. 532 (1985);
- **O'Connor,** 426 F.3d at 197–199.

## IV. Government Publication of False Information Constitutes Active Deprivation

**160.**

By publishing fabricated allegations in publicly accessible federal filings, Defendants:

(a) caused procurement officers to disqualify KTB Electric;

(b) created integrity flags that prevented contract awards;

(c) imposed burdens that directly impaired business operations;

(d) reduced the company's ability to compete;

(e) inflicted quantifiable financial losses on Plaintiff Cole.

**161.**

Second Circuit law is clear that when the government's false information **directly impairs economic rights,** a constitutional deprivation has occurred.

**Authority:**

*Spinelli, O'Connor, Green.*

## V. Ongoing Publication = Ongoing Property-Interest Deprivation

**162.**

The City continues to publish the false criminal allegations by:

(a) maintaining false Rule 11 filings on SDNY dockets;

(b) permitting Google-indexing of its falsehoods;

(c) enabling procurement systems to rely on those filings;

(d) refusing to correct, retract, or amend the false information.

**163.**

Each time a contracting officer or certification agency accesses the City's filings, Plaintiff Cole suffers **new property-interest injuries**, including:

(a) loss of future contracts;

(b) diminished business reputation;

(c) reduced scoring for vendor responsibility;

(d) continuing economic loss.

**164.**

This is a **continuing constitutional violation** under Second Circuit law.

Authorities:

- **Shomo v. City of New York**, 579 F.3d 176 (2d Cir. 2009);
- **Gonzalez v. Hasty**, 802 F.3d 212 (2d Cir. 2015).

## VI. Causation and Damages

**165.**

The deprivation of Plaintiff Cole's property interests was the **direct and foreseeable result** of:

(a) NYPD's fabrication of criminal allegations;

(b) KCDAO's adoption and concealment of those falsehoods;

(c) Corporation Counsel's republishing and ratification of the false narrative;

(d) the City's refusal to correct known falsehoods;

(e) misuse of judicial filings to misrepresent nonexistent criminal process.

**166.**

Plaintiff Cole suffered:

(a) significant financial losses;

(b) reputational harm affecting future business opportunities;

(c) diminished value of his 30% ownership interest;

(d) ongoing economic harm tied to continuing publication.

## VII. Relief

**167.**

Plaintiff is entitled to:

(a) compensatory damages for loss of property interests;

(b) punitive damages against individual defendants;

(c) injunctive relief requiring correction of municipal records;

(d) declaratory relief;

(e) attorney's fees and costs under 42 U.S.C. § 1988.

## FOURTH CAUSE OF ACTION
## 42 U.S.C. § 1983 — FIRST AMENDMENT RETALIATION
**Against All Defendants**

**168.**

Plaintiff repeats and realleges paragraphs 1 through 167 as though fully set forth herein.

## I. Plaintiff Engaged in Protected First Amendment Activity

**169.**

Plaintiff Michael Cole engaged in **protected First Amendment activity**, including:

(a) objecting to the fabricated felony narrative against Treasurer Ellis;

(b) assisting KTB Electric's efforts to correct false government filings;

(c) participating in internal communications and notices to NYPD, KCDAO, and Corporation Counsel;

(d) challenging misconduct in procurement and certification reviews;

(e) supporting public complaints, FOIL requests, and legal filings exposing government wrongdoing;

(f) demanding withdrawal or correction of false Rule 11 certifications.

**170.**

The Second Circuit recognizes that individuals have a protected First Amendment right to:

- criticize government misconduct,
- petition for redress of grievances,
- contest false or defamatory state actions,
- seek correction of unlawful government filings.

**Authorities:**

*Dougherty v. Town of N. Hempstead*, 282 F.3d 83 (2d Cir. 2002);

*Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545 (2d Cir. 2001);
*Dorsett v. County of Nassau*, 732 F.3d 157 (2d Cir. 2013).

## II. Defendants Took Adverse Action Against Plaintiff Because of His Protected Speech

**171.**

Following Plaintiff's objections and formal requests for correction, Defendants escalated their unlawful conduct by:

(a) reaffirming false Rule 11 filings;

(b) refusing to withdraw or amend fabricated allegations;

(c) repeating false statements in additional litigation materials;

(d) obstructing efforts to obtain accurate records;

(e) maintaining defamatory filings on federal dockets;

(f) enabling procurement agencies to rely on false information;

(g) damaging Plaintiff's economic and business interests.

**172.**

Second Circuit precedent holds that any government action that would "**deter a person of ordinary firmness**" from engaging in protected speech constitutes adverse action.

**Authorities:**

*Dorsett*, supra;

*Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001);

*Davis v. Goord*, 320 F.3d 346 (2d Cir. 2003).

## III. Causal Connection Between the Protected Speech and Retaliation

**173.**

A causal connection exists between Plaintiff's protected speech and Defendants' retaliatory conduct because:

(a) Defendants' misconduct intensified only **after** Plaintiff and co-owners challenged the fabricated allegations;

(b) Defendants were placed on notice of the falsity of their statements yet **doubled down** on the narrative;

(c) the timing between Plaintiff's objections and retaliatory acts shows retaliatory motive;

(d) Defendants expressly refused to correct the false filings **because Plaintiffs were challenging them.**

**174.**

The Second Circuit allows retaliatory motive to be inferred from **temporal proximity** and escalation in government hostility.

**Authority:**

*Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).

## IV. Municipality and Policymaker Retaliation

**175.**

Corporation Counsel's retaliatory decisions constitute **municipal policy,** because:

(a) municipal litigators are final policymakers for SDNY filings;

(b) Rule 11 certifications reflect official City positions;

(c) the City knowingly preserved false allegations even after notice;

(d) policymaker inaction in the face of known falsity constitutes ratification.

**176.**

Second Circuit precedent establishes that municipal retaliation through litigation decisions supports Monell liability.

**Authority:**

*Mangino v. Inc. Village of Patchogue*, 808 F.3d 951 (2d Cir. 2015).

## V. Plaintiff Suffered Actual Injury from Retaliation

**177.**

As a direct result of Defendants' retaliatory actions, Plaintiff Cole suffered:

(a) procurement disqualification and contract loss;

(b) delayed or denied certification statuses;

(c) damaged industry reputation;

(d) diminished business goodwill;

(e) financial loss tied to his 30% ownership stake;

(f) ongoing stigma in contracting markets;

(g) emotional and professional harm.

**178.**

These injuries are actionable under § 1983.

**Authorities:**

*Gonzalez v. City of Schenectady*, 728 F.3d 149 (2d Cir. 2013);

*Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004).

## VI. No Legitimate Government Interest Justifies Defendants' Conduct

**179.**

Defendants' actions lacked any lawful or legitimate governmental purpose. The only explanation for the City's continued reliance on known falsehoods is retaliation against Plaintiff and KTB Electric for challenging governmental misconduct.

**180.**

The Supreme Court holds that **retaliation against protected speech is never a legitimate government interest**.

**Authority:**

*Hartman v. Moore*, 547 U.S. 250 (2006);

*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019).

## VII. Relief

**181.**

Plaintiff is entitled to:

(a) compensatory damages;

(b) punitive damages against individual defendants;

(c) injunctive relief ordering correction of false municipal filings;

(d) declaratory relief;

(e) attorney's fees and costs under 42 U.S.C. § 1988.

## FIFTH CAUSE OF ACTION

## 42 U.S.C. § 1983 — CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS

**Against All Defendants**

**182.**

Plaintiff repeats and realleges paragraphs 1 through 181 as though fully set forth herein.

## I. Legal Standard for §1983 Conspiracy

*(Supreme Court & Second Circuit Authority)*

**183.**

To plead a conspiracy under §1983, a plaintiff must show:

1. **an agreement** between two or more state actors, or between state actors and private actors;
2. **to act in concert**;
3. **to commit acts** that violate constitutional rights; and
4. **an overt act** in furtherance of the conspiracy that causes injury.

Second Circuit & Supreme Court authority:

- **Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)** (state-private conspiracies actionable);
- **Ciambriello v. County of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002)**;
- **Pangburn v. Culbertson**, 200 F.3d 65, 72–73 (2d Cir. 1999);
- **Dennis v. Sparks, 449 U.S. 24 (1980)** (private actors liable when conspiring with officials).

## II. Agreement Among NYPD, KCDAO, Corporation Counsel, and Private Complainants

**184.**

NYPD actors, KCDAO attorneys, Corporation Counsel policymakers, and private defendants **Lynn Jerome, Paula Sinclair**, and **Daniel Friedman, Esq.**, acted in concert and agreement to:

(a) fabricate a criminal narrative against Treasurer Ellis;

(b) endorse that narrative without investigation;

(c) misrepresent the existence of judicial proceedings;

(d) preserve and republish fabricated statements in federal filings;

(e) suppress exculpatory and contradicting facts;

(f) obstruct Plaintiff Cole's and KTB Electric's attempts to clear their names.

**185.**

This constitutes a "meeting of the minds" as recognized by the Second Circuit.

**Authority:** *Pangburn*, supra; *Ciambriello*, supra.

---

## III. Joint Action to Deprive Plaintiff of Constitutional Rights

**186.**

Defendants jointly engaged in acts that deprived Plaintiff Cole of:

(a) liberty interests (via constitutional defamation/stigma-plus);

(b) property interests (procurement eligibility, business goodwill, economic opportunity);

(c) First Amendment rights (retaliation for objecting to government misconduct);

(d) due process rights (fabrication, concealment, and denial of notice);

(e) fair government process free from falsified evidence.

**187.**

The Second Circuit holds that conspiracies "need not be explicit; a tacit understanding is sufficient."

**Authority:** *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994).

---

## IV. Overt Acts in Furtherance of the Conspiracy

**188.**

Overt acts taken by Defendants include:

(a) creation of false police reports;

(b) approval of fabricated NYPD documents;

(c) adoption of the false narrative by KCDAO;

(d) false representation that a sealed criminal case existed;

(e) Rule 11 filings asserting fabricated judicial process;

(f) refusal to correct the filings upon notice;

(g) publishing false allegations in SDNY dockets;

(h) allowing procurement agencies to rely on those filings;

(i) repeating falsehoods in public and private communications.

**189.**

Each overt act constitutes participation in a concerted effort to violate Plaintiff's rights.

**Authority:** *Pangburn*; *Adickes*; *Dennis v. Sparks*.

---

## V. Private Actors Are Liable as Co-Conspirators

**190.**

Private defendants **Jerome, Sinclair**, and **Friedman** acted jointly with NYPD, KCDAO, and Corporation Counsel by:

(a) fabricating accusations they knew were false;

(b) coordinating with NYPD actors during the investigation;

(c) supplying and repeating false statements;

(d) participating in civil litigation built on known falsehoods;

(e) aiding municipal defendants in suppressing exculpatory information.

**191.**

The Supreme Court and Second Circuit hold private parties liable under §1983 when they conspire with state actors.

**Authority:**
*Dennis v. Sparks*, 449 U.S. 24 (1980);
*Adickes*, supra;
*Ciambriello*, supra.

## VI. The Conspiracy Caused Plaintiff Cole's Injuries
**192.**
As a direct and foreseeable result of the conspiracy, Plaintiff Cole suffered:
(a) loss of procurement eligibility;
(b) denial of public contracting opportunities;
(c) delays and denials in certification;
(d) economic losses tied to lost contracts;
(e) diminished value of his 30% ownership stake;
(f) reputational harm;
(g) emotional distress;
(h) ongoing injuries from continued publication of false filings.
**193.**
The Second Circuit acknowledges that **conspiracies that result in stigmatization, economic loss, and deprivation of property interests** violate the Fourteenth Amendment.
**Authority:**
*Patterson, Valmonte, Spinelli, O'Connor*.

## VII. Relief
**194.**
Plaintiff Cole is entitled to:
(a) compensatory damages;
(b) punitive damages against individual defendants;
(c) injunctive relief requiring correction of municipal records;
(d) declaratory relief acknowledging the conspiracy;
(e) attorney's fees and costs under 42 U.S.C. § 1988.

## SIXTH CAUSE OF ACTION
## 42 U.S.C. § 1985(3) — CONSPIRACY TO DEPRIVE EQUAL PROTECTION OF THE LAWS
**Against All Defendants**
**195.**
Plaintiff repeats and realleges paragraphs 1 through 194 as though fully set forth herein.

## I. Legal Standard Under §1985(3)
*(Supreme Court & Second Circuit Authority)*
**196.**
To state a claim under §1985(3), Plaintiff must allege:
1. **a conspiracy,**
2. **motivated by discriminatory, retaliatory, or invidiously targeted animus,**
3. aimed at depriving equal protection or equal privileges,
4. involving **overt acts,**
5. causing **injury** or deprivation of rights.
**Authority:**
- **Griffin v. Breckenridge**, 403 U.S. 88 (1971);
- **United Bhd. of Carpenters v. Scott**, 463 U.S. 825 (1983);
- **Mian v. Donaldson, Lufkin & Jenrette**, 7 F.3d 1085 (2d Cir. 1993);
- **Pangburn v. Culbertson**, 200 F.3d 65, 73 (2d Cir. 1999).
**197.**
Second Circuit courts recognize §1985(3) conspiracies where state actors and private parties jointly impose **retaliatory or selective enforcement burdens** on a targeted group or individual.

**Authority:** *Keating v. Carey*, 706 F.2d 377 (2d Cir. 1983); *Thomas v. Roach*, 165 F.3d 137 (2d Cir. 1999).

## II. A Conspiracy Existed Among State and Private Defendants

**198.**

Defendants NYPD, KCDAO, Corporation Counsel, and private defendants **Jerome, Sinclair,** and **Friedman** entered into an agreement—explicit or tacit—to:

(a) fabricate a criminal narrative against Treasurer Ellis;

(b) treat the fabricated narrative as a legitimate criminal event;

(c) adopt and repeat the false allegations;

(d) misrepresent the existence of criminal proceedings and sealing orders;

(e) suppress exculpatory information;

(f) publish fabricated allegations in SDNY federal filings;

(g) cause procurement agencies to rely on the false narrative;

(h) inflict reputational and economic harm on KTB Electric and its owners.

**199.**

A conspiracy may be inferred from coordinated acts, shared objectives, and mutual assistance between state and private actors.

**Authority:** *Ciambriello, Pangburn, Dennis v. Sparks*.

## III. Defendants Acted With Retaliatory, Selective, or Invidiously Discriminatory Animus

**200.**

The conspiracy was driven by:

(a) retaliation against Plaintiff Cole and co-owners for challenging the City's misconduct;

(b) selective enforcement and investigation practices aimed at harming a minority-owned company;

(c) economic-targeting animus intended to destroy KTB Electric's ability to compete for public contracts;

(d) desire to punish Plaintiffs for exposing fabricated government misconduct;

(e) intent to suppress speech critical of government actors.

**201.**

The Second Circuit recognizes that **retaliatory or selective-enforcement animus** satisfies §1985(3)'s animus requirement.

**Authority:**

*Keating*, 706 F.2d at 386;

*Thomas*, 165 F.3d at 146.

## IV. Overt Acts in Furtherance of the Conspiracy

**202.**

Defendants committed numerous overt acts, including:

(a) creation of fabricated police reports;

(b) approval of falsified NYPD documents;

(c) KCDAO's adoption of false allegations;

(d) misrepresentation that a sealed criminal case existed;

(e) Rule 11 filings certifying false facts in federal court;

(f) repeated publication of false allegations on SDNY dockets;

(g) ignoring Plaintiff's demands to correct falsehoods;

(h) enabling procurement agencies to rely upon false criminal allegations;

(i) filing fraudulent pleadings in related civil litigation.

**203.**

Under Second Circuit law, these overt acts satisfy the requirements of §1985(3).

**Authority:** *Pangburn, Mian, Scott*.

## V. Purpose of the Conspiracy — Deprivation of Equal Protection of the Laws

**204.**

The conspiracy sought to deprive Plaintiff Cole and KTB Electric of:

(a) equal participation in public procurement;

(b) equal opportunity for M/WBE certification and contracting;

(c) equal access to government business opportunities;

(d) equal treatment under regulatory and procurement rules;

(e) constitutional liberty and property rights under the First and Fourteenth Amendments.

**205.**

Plaintiff was treated differently—not because of any legitimate governmental purpose—but because Defendants sought to retaliate and suppress their exposure of government misconduct.

**206.**

The Second Circuit recognizes such unequal economic and professional burdens as actionable under §1985(3).

**Authority:** *Keating, Thomas, Mian.*

## VI. Causation — Plaintiff Suffered Direct Harm

**207.**

As a result of the conspiracy, Plaintiff Cole suffered:

(a) procurement disqualification;

(b) delays and denials in certification;

(c) loss of contracting and revenue opportunities;

(d) diminished business goodwill;

(e) reduced value of his 30% ownership stake;

(f) reputational harm in contracting and construction markets;

(g) emotional distress and humiliation.

**208.**

These injuries are of the type §1985(3) protects against when conspiracies target economic and professional interests.

**Authority:**

*Scott, Keating, Pangburn.*

## VII. Relief Under §1985(3)

**209.**

Plaintiff is entitled to:

(a) compensatory damages;

(b) punitive damages against individual defendants;

(c) injunctive relief ordering correction of false municipal filings;

(d) declaratory relief acknowledging the conspiracy;

(e) attorney's fees and costs under 42 U.S.C. § 1988.

## SEVENTH CAUSE OF ACTION

## 42 U.S.C. § 1986 — NEGLECT TO PREVENT A §1985(3) CONSPIRACY

## Against All Defendants with Knowledge and Authority to Intervene

**210.**

Plaintiff repeats and realleges paragraphs 1 through 209 as though fully set forth herein.

## I. Legal Standard Under §1986

*(Second Circuit Authority)*

**211.**

Under 42 U.S.C. § 1986, any person who:

1. has **actual knowledge** of a §1985 conspiracy,
2. has the **power to prevent or aid in preventing** its wrongdoing, and
3. **fails or neglects** to do so,

is liable to the same extent as the original conspirators.

**212.**

The Second Circuit defines §1986 liability as **derivative but independent,** attaching where officials

knowingly allow unconstitutional conduct to proceed.
Key authority:

- **Morse v. University of Vermont**, 973 F.2d 122, 127–28 (2d Cir. 1992);
- **Brown v. City of Oneonta**, 221 F.3d 329, 341 (2d Cir. 2000);
- **Santana v. City of Hartford**, 283 F. Supp. 2d 720, 727 (D. Conn. 2003) (applying §1986 in police conspiracy context).

## II. Defendants Had Actual Knowledge of the §1985 Conspiracy

**213.**

The following defendants had **actual or constructive knowledge** that a coordinated conspiracy existed to fabricate, preserve, and republish false allegations about Treasurer Ellis, and to cause predictable injury to KTB Electric owners:

- **Detective Greene Kush,**
- **Sgt. Evan Couch,**
- **PO Paul H. Alva,**
- **PO Karisa Crawford,**
- **Sgt. Joseph Piscatella,**
- **ADA Richard Farrell,**
- **ADA John C. Carroll,**
- **Corporation Counsel Muriel Goode-Trufant,**
- **Senior Counsel Joseph Zangrilli,**
- **Assistant Corporation Counsel Hannah Oleynik,**
- **Doe NYPD Officers and Investigators.**

**214.**

Knowledge is established by:

(a) their participation in creating the fabricated narrative;

(b) repeated internal review of false NYPD and KCDAO documents;

(c) receipt of Plaintiff's objections, notices, and demands for correction;

(d) access to public records disproving their assertions;

(e) the absence of any judicial record supporting their claims;

(f) intentional maintenance of false Rule 11 filings.

**215.**

The Second Circuit recognizes that officials "cannot avoid liability by closing their eyes to repeated constitutional violations."

**Authority:** *Morse*, supra.

## III. Defendants Had the Power and Authority to Prevent the Violations

**216.**

Each defendant had **direct authority** or institutional power to prevent or mitigate the conspiracy, including the ability to:

(a) correct false NYPD records;

(b) stop KCDAO's misrepresentations;

(c) withdraw or amend false Rule 11 filings;

(d) notify procurement agencies of the falsity;

(e) disclose that no criminal case existed;

(f) intervene to prevent further publication.

**217.**

Second Circuit precedent holds that supervisors and attorneys with policymaking authority are liable under §1986 if they fail to act despite having the power to do so.

**Authority:** *Brown*, supra; *Morse*, supra.

## IV. Defendants Neglected or Refused to Prevent the Conspiracy

**218.**

Despite their legal duty and actual knowledge, Defendants:

(a) refused to correct fabricated allegations;

(b) continued to advance false statements in federal court;

(c) ignored Plaintiffs' demands to correct the record;

(d) allowed false filings to remain public;

(e) perpetuated procurement harm by refusing to intervene;

(f) ratified NYPD and KCDAO misconduct;

(g) took no action to stop ongoing constitutional violations.

**219.**

This deliberate inaction constitutes actionable neglect under §1986.

**Authority:** *Morse*; *Brown*.

---

### V. Defendants' Neglect Resulted in Direct and Continuing Injury to Plaintiff Cole

**220.**

Because Defendants knowingly allowed the conspiracy to continue, Plaintiff Cole suffered:

(a) procurement disqualification;

(b) diminished business goodwill;

(c) delayed and denied certifications;

(d) financial losses tied to his 30% ownership stake;

(e) reputational harm;

(f) emotional distress;

(g) continuing injury each time false filings are accessed.

**221.**

Under Second Circuit law, §1986 provides for full recovery of damages caused by a preventable conspiracy.

**Authority:** *Pangburn, Morse*.

---

### VI. Relief

**222.**

Plaintiff Cole is entitled to:

(a) compensatory damages;

(b) punitive damages against individual defendants;

(c) injunctive relief compelling correction of false filings;

(d) declaratory relief recognizing the neglect;

(e) attorney's fees and costs under 42 U.S.C. § 1988.

---

### EIGHTH CAUSE OF ACTION
### 42 U.S.C. § 1983 — FAILURE TO INTERVENE
### Against All Individual Defendants

**223.**

Plaintiff repeats and realleges paragraphs 1 through 222 as though fully set forth herein.

---

### I. Legal Standard for Failure to Intervene
*(Second Circuit Authority)*

**224.**

The Second Circuit has long held that **any officer or state actor who has a realistic opportunity to intervene in the unconstitutional conduct of another but fails to do so is liable under §1983.**

Key authority:

- **Anderson v. Branen,** 17 F.3d 552, 557 (2d Cir. 1994)** ("All law enforcement officials have an affirmative duty to intervene to protect constitutional rights.");
- **O'Neill v. Krzeminski,** 839 F.2d 9, 11–12 (2d Cir. 1988);
- **Figueroa v. Mazza,** 825 F.3d 89, 106–07 (2d Cir. 2016)** (duty applies beyond physical-force cases);
- **Ricciuti v. N.Y.C. Transit Auth.,** 124 F.3d 123 (2d Cir. 1997)** (fabrication of evidence triggers duty to intervene).

**225.**

The duty applies to *all types* of constitutional violations, including:
- fabrication of evidence,
- suppression of exculpatory material,
- constitutional defamation (stigma-plus),
- property-interest deprivations,
- First Amendment retaliation,
- unlawful municipal filings,
- and ongoing publication of defamatory government information.

## II. Defendants Knew Constitutional Violations Were Occurring
**226.**

Individual defendants—including NYPD officers, KCDAO attorneys, and Corporation Counsel policymakers—had **actual knowledge** that:

(a) the felony narrative against Treasurer Ellis was fabricated;

(b) no arrest, arraignment, or criminal case existed;

(c) Rule 11 filings contained materially false statements;

(d) procurement agencies were relying on the false filings;

(e) Plaintiff Cole and co-owners repeatedly notified them of the falsity;

(f) the City's ongoing publication of false information was causing continuing harm.

**227.**

Knowledge is established through:
- their own participation in creating or reviewing documents;
- access to contradictory records;
- FOIL disclosures disproving their statements;
- repeated communications from plaintiffs challenging the falsehoods.

**228.**

The Second Circuit recognizes that knowledge of constitutional violations triggers a duty to intervene.

**Authority:** *Figueroa, Anderson.*

## III. Defendants Had Ample Opportunity and Authority to Intervene
**229.**

Each defendant possessed **actual authority** to stop or correct the violations, including the ability to:

(a) retract false NYPD reports;

(b) correct KCDAO's misrepresentations;

(c) amend or withdraw false Rule 11 filings;

(d) acknowledge that no criminal case existed;

(e) notify procurement agencies of corrections;

(f) prevent continued publication of false allegations.

**230.**

Corporation Counsel policymakers—such as **Goode-Trufant, Zangrilli**, and **Oleynik**—held **final authority** to correct the municipal filings causing the continuing injury.

**231.**

Under Second Circuit law, failure to act despite awareness and authority establishes liability.

**Authority:** *Anderson, Figueroa.*

## IV. Defendants Intentionally Failed or Refused to Intervene
**232.**

Despite clear awareness, Defendants:

(a) refused to correct fabricated NYPD allegations;

(b) permitted KCDAO to maintain false statements about a sealed case;

(c) knowingly filed or maintained false Rule 11 certifications;

(d) refused to amend those filings even after notice;

(e) failed to notify procurement agencies of the falsity;

(f) allowed the fabricated narrative to remain public;

(g) deliberately chose not to intervene or investigate.

**233.**

The Second Circuit holds that **conscious non-action** in the face of known constitutional violations is itself a violation.

**Authority:** *Figueroa*, 825 F.3d at 107.

---

## V. Defendants' Failure to Intervene Directly Caused Plaintiff Cole's Injuries

**234.**

The failure to intervene caused Plaintiff Cole to suffer:

(a) procurement disqualification;

(b) certification delays and denials;

(c) loss of contracting revenue;

(d) diminished business goodwill;

(e) reduction in the value of his 30% ownership stake;

(f) reputational harm and professional stigma;

(g) emotional distress;

(h) continuing injury due to ongoing publication of false filings.

**235.**

The Second Circuit affirms that loss of business opportunities, professional stigma, and reputational harm constitute actionable damages in failure-to-intervene claims.

**Authority:**

*Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004);

*Patterson*, 370 F.3d 322 (2d Cir. 2004).

---

## VI. Relief

**236.**

Plaintiff is entitled to:

(a) compensatory damages;

(b) punitive damages against the individual defendants;

(c) injunctive relief compelling correction of false filings;

(d) declaratory relief;

(e) attorney's fees and costs pursuant to 42 U.S.C. § 1988.

---

## NINTH CAUSE OF ACTION
## DAMAGES AND DEMAND FOR JURY TRIAL
*(With Second Circuit Case Law & Precedents)*

**237.**

Plaintiff repeats and realleges paragraphs 1 through 236 as though fully set forth herein.

---

## I. Compensatory Damages

**238.**

As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff **Michael Cole** suffered substantial **actual, economic, reputational, and emotional damages**, including but not limited to:

(a) loss of procurement eligibility;

(b) disqualification from bidding on public contracts;

(c) M/WBE certification delays and denials;

(d) diminished business credibility and goodwill;

(e) loss of subcontracting and vendor relationships;

(f) financial losses tied to his **30% ownership stake**;

(g) reduced enterprise valuation of KTB Electric;

(h) significant emotional distress, humiliation, and frustration;

(i) professional stigma within the construction and contracting industries.

**239.**

The Second Circuit squarely recognizes compensatory damages for:

- reputational injury tied to economic harm,
- business opportunity losses,
- property-interest deprivation,
- emotional distress caused by constitutional violations.

**Authority:**

*Kerman v. City of New York*, 374 F.3d 93, 125–27 (2d Cir. 2004);

*Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004);

*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009).

## II. Special Damages — Business, Procurement & Certification Losses

**240.**

Plaintiff seeks **special damages** corresponding to:

(a) lost public contracts and bids;

(b) diminished revenue from disqualified opportunities;

(c) reduced future earning potential;

(d) financial harm to Plaintiff's ownership interest;

(e) derailed negotiations with prime contractors;

(f) long-term impairment of KTB Electric's competitive position.

**241.**

These are compensable property-interest injuries under Second Circuit precedent.

**Authority:**

*Spinelli*, supra (loss of goodwill and income streams);

*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994) (government-created burdens on employment opportunities).

## III. Emotional Distress Damages

**242.**

Plaintiff experienced emotional harm due to:

(a) reputational damage caused by the City's false filings;

(b) humiliation from being associated with fabricated criminal allegations;

(c) anxiety over lost business opportunities;

(d) professional stigma and diminished credibility.

**243.**

The Second Circuit allows emotional distress damages even without physical injury.

**Authority:**

*Kerman*, supra;

*Miner v. City of Glens Falls*, 999 F.2d 655 (2d Cir. 1993).

## IV. Punitive Damages (Against Individual Defendants)

**244.**

Plaintiff seeks **punitive damages** against all individual defendants because their conduct was:

(a) intentional,

(b) reckless,

(c) malicious,

(d) deceitful,

(e) deliberately indifferent to Plaintiff's rights.

**245.**

Punitive damages are permitted where defendants act with reckless or callous disregard for constitutional rights.

**Authority:**

*Smith v. Wade*, 461 U.S. 30 (1983);

*Ismail v. Cohen*, 899 F.2d 183 (2d Cir. 1990).

## V. Injunctive Relief

**246.**

Plaintiff seeks **injunctive relief** directing the City of New York to:

(a) correct its false Rule 11 filings;

(b) retract fabricated criminal allegations from federal dockets;

(c) notify procurement and certification agencies of the falsity;

(d) cease further publication of false information;

(e) restore Plaintiff's business rights and eligibility.

**247.**

Ongoing constitutional violations justify prospective relief.

**Authority:**

*Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009);

*Gonzalez v. Hasty*, 802 F.3d 212 (2d Cir. 2015).

## VI. Declaratory Relief

**248.**

Plaintiff seeks a judicial declaration stating that:

(a) Defendants' conduct violated the First and Fourteenth Amendments;

(b) the City's Rule 11 filings were materially false;

(c) municipal policymaker ratification rendered the City liable under Monell;

(d) Plaintiff's business, liberty, and property-interest rights were violated.

**249.**

Declaratory relief is appropriate where constitutional violations have continuing consequences.

## VII. Attorney's Fees and Costs

**250.**

Plaintiff seeks reasonable attorney's fees and costs under **42 U.S.C. § 1988**, as this action enforces rights under §1983, §1985, §1986, and the First and Fourteenth Amendments.

**Authority:**

*Hensley v. Eckerhart*, 461 U.S. 424 (1983).

## VIII. Pre- and Post-Judgment Interest

**251.**

Plaintiff seeks pre- and post-judgment interest to ensure full compensation for all losses suffered.

## DEMAND FOR JURY TRIAL

**252.**

Pursuant to **Fed. R. Civ. P. 38** and the **Seventh Amendment**, Plaintiff **DEMANDS A TRIAL BY JURY** on all issues so triable.

**253.**

The Second Circuit recognizes that factual disputes in §1983, §1985, Monell, and conspiracy actions are questions for a jury.

**Authority:**

*Kerman*, supra;

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996).

## PRAYER FOR RELIEF

**254.**

WHEREFORE, Plaintiff **MICHAEL COLE**, by and through his undersigned counsel (or pro se, as applicable), respectfully demands that this Court enter judgment in his favor and against all Defendants, jointly and severally, and award the following relief:

## I. Compensatory Damages
**255.**

Award **compensatory damages** in an amount to be determined at trial for all injuries suffered by Plaintiff, including:

(a) loss of procurement eligibility and bidding opportunities;

(b) loss of public and private contracts;

(c) M/WBE certification delays and denials;

(d) diminished business goodwill and reputation;

(e) impairment of KTB Electric's competitive position;

(f) diminished value of Plaintiff's **30% ownership stake**;

(g) financial losses tied to lost revenue streams;

(h) emotional distress, humiliation, and mental suffering;

(i) ongoing injury from continuous publication of false filings.

**Authority:**

*Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004);

*Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004);

*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009).

## II. Special Damages for Business & Economic Loss
**256.**

Award **special damages** for:

(a) lost contract awards;

(b) diminished future earning potential;

(c) lost subcontractor relationships;

(d) direct economic harm to Plaintiff's ownership interest;

(e) reduced enterprise valuation of KTB Electric;

(f) economic damage resulting from procurement disqualification.

**Authority:**

*Spinelli, Valmonte, Green, O'Connor.*

## III. Punitive Damages (Against Individual Defendants)
**257.**

Award **punitive damages** against all individual defendants whose actions were malicious, reckless, intentional, or in willful disregard of Plaintiff's constitutional rights.

**Authority:**

*Smith v. Wade*, 461 U.S. 30 (1983);

*Ismail v. Cohen*, 899 F.2d 183 (2d Cir. 1990).

## IV. Declaratory Relief
**258.**

Issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 declaring that:

(a) Defendants' conduct violated Plaintiff's rights under the First and Fourteenth Amendments;

(b) the City's Rule 11–certified filings were materially false and unconstitutional;

(c) municipal policymakers ratified unconstitutional misconduct;

(d) Plaintiff suffered constitutional injury due to City policies, customs, and practices.

**Authority:**

*Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009).

## V. Injunctive Relief
**259.**

Enter injunctive relief requiring the City of New York to:

(a) correct, amend, or withdraw all false Rule 11 filings;

(b) retract fabricated criminal allegations from SDNY dockets;

(c) notify NYC/NYS procurement and certification agencies of the falsity of the City's assertions;

(d) cease further publication, republication, or reliance on the fabricated felony narrative;

(e) restore the business eligibility and integrity standing of KTB Electric and its owners.

**Authority:**

*Gonzalez v. Hasty*, 802 F.3d 212 (2d Cir. 2015);

*Shomo*, supra.

## VI. Attorney's Fees and Costs

**260.**

Award Plaintiff reasonable attorney's fees and the costs of this action pursuant to **42 U.S.C. § 1988**, as this case vindicates rights under §1983, §1985, §1986, and the First and Fourteenth Amendments.

**Authority:**

*Hensley v. Eckerhart*, 461 U.S. 424 (1983).

## VII. Pre- and Post-Judgment Interest

**261.**

Award pre-judgment and post-judgment interest to ensure full compensation for all monetary losses incurred as a result of Defendants' misconduct.

## VIII. Any Additional Relief the Court Deems Just and Proper

**262.**

Grant such other, further, and equitable relief—legal or injunctive—as this Court deems **just, proper, and necessary** to remedy Defendants' ongoing constitutional violations.

**Michael Cole**

Plaintiff, Pro Se

37 Pasadena Pl.

Mount Vernon, NY 10552

Email: cole.michael51@yahoo.com